

Arthur Z. Schwartz
Principal Attorney
aschwartz@afjlaw.com

225 Broadway, Suite 1902
New York, New York 10007

t. (212) 285-1400
f. (212) 285-1410

www.afjlaw.com

October 25, 2022

By ECF

Hon. Philip M. Halpern
United States District Court
300 Quarropas Street
White Plains, New York 10601

>   Re:   Gioia v Project Veritas
>         22-cv-06710
>         Response to Pre-Motion Letter

Dear Judge Halpern:

      We write in response to the Pre-Motion to Dismiss Letter filed by Project Veritas ("PV"), one of the two co-employer defendants in this case, and its two chief officials, James O'Keefe, and Tom O'Hara , who are being sued by six former employees in a case alleging failure to pay overtime pay, in violation of the Fair Labor Standards Act and the New York Labor Law, failure to pay *any wages at all* for work done in excess of 40 hours, also a violation of the FLSA and the NY Labor Law, and failure to pay "spread of wages" required in certain circumstances under the NY Labor Law. Mr. Flowers brings suit under ERISA, as well, because he was intentionally misclassified as an independent contractor, which caused him to be excluded from the PV sick pay, vacation, and health benefits programs, along with Federal overtime. The other co-employer, Engage PEO, LLC, who has separate counsel, has not joined in with Mr. Kelton's and Mr. Clarke's argument and is engaged with me in settlement discussions (I have held off on service).

      We submit that the moving defendants' proposed motion is entirely meritless.

**A.      The Separation Agreement Argument**

      Defendants have addressed  this argument to the two plaintiffs (Zappier and Flowers) who have signed releases, on separate occasions separately. In neither case is the defense the type of defense which can be upheld, as the moving defendants argue, simply on the basis of the language in the Separation Agreement.

      **1.   Antonietta Zappier and the Stay Request**

      With respect to Plaintiff Zappier, Defendants seek either to dismiss, or to stay pending completion of litigation of a Westchester Supreme Court case titled *Project Veritas v Zappier*.


Hon. Philip M. Halpern
October 25, 2022
Page 2

 

The lawsuit titled *Zappier v Project Veritas* 22-cv-06709 ("the Zappier Lawsuit"), which is also assigned to this Court, includes a detailed recitation of the facts which led to Mrs. Zappier's Separation Agreement, which was signed after she was fired, on her way out the door. The Zappier Lawsuit is also a detailed recitation of the incredible sexually hostile work environment Plaintiff had to work in which was created for years by PV's leadership, a sexual assault she endured at a Christmas party in December 2021 by a top PV executive, and a quid pro quo termination four days after she turned down that executive's invitation to spend a weekend at his home. It also includes a detailed recitation of her hurried, unexpected discharge and being asked to sign a Separation Agreement literally on her way out the door.

Literally, on March 30, 2022, Plaintiff Zappier, who had been employed for 2.5 years as the Executive Assistant to PV's CEO, was fired and signed a broad Separation Agreement *as she was being escorted out the door* after a surprise meeting where she was told that she was being terminated, one week after receiving a raise for exemplary service. On April 6, 2022, I wrote, as Plaintiff's counsel, to PV and revoked the agreement, which I asserted was unlawful. For the next two months, PV's counsel and I attempted to negotiate a new agreement, and his offers increased from $7500 to more than $50,000.

When I told Mr. Kelton that we would proceeding with litigation, he jumped into State Court, seeking to argue , as a matter of law, that the Separation Agreement was binding, and falsely told the State Court that the Separation Agreement had been negotiated over the course of several days. . Nine pages of the 13-page State Court complaint unethically detail the back-and-forth negotiations over the next two months. The core of the complaint is set forth in Paragraph 8: "Enough is enough." Three pages of the complaint describe a made-up incident between a PV employee and Plaintiff's husband; the tort claim arising from this made-up incident has been withdrawn. The complaint seeks either a declaration that the original Separation Agreement was binding, **or** a return of the $7500 payment.

We have moved to dismiss the State Complaint because the documents show that the agreement was not "knowing and willful," *see Bormann v. AT&T Communications, Inc.,* 875 F.2d 399, 402–03 (2d Cir.), cert. denied, 493 U.S. 924 (1989), and because it violated the Older Americans Benefit Protection Act (OWBPA) (which requires that a waiver of ADEA rights include 21 days of consideration, the right to consult a lawyer, and a right to revoke). If we lose that motion the case will not be over; there will need to be discovery about the circumstances around the signing.



Hon. Philip M. Halpern
October 25, 2022
Page 3

Counsel cites *Lafont v Phillip*, 2022 WL 2132992 at *7 for the proposition that this case, or at least Ms. Zappier's part of the case, should be deferred until after the State Court case is resolved. *Lafont*, at the page cited, discusses the discretionary stays. Citing several District Court cases, Magistrate Wicks states: "When deciding whether a discretionary stay is warranted, courts weigh:(1) considerations of comity; (2) promotion of judicial efficiency; (3) adequacy and extent of relief available in the alternative forum; (4) identity of parties and issues in both actions; (5) likelihood of prompt disposition in the alternative forum; (6) convenience of the parties, counsel and witnesses; and (7) possibility of prejudice to a party as the result of the stay.

There is no reason to believe that the resolution of the "knowing and willful " issues with respect to Ms. Zappier will be resolved any faster in State court than here. In that case there is a pending motion to dismiss addressed to a disputed factual assertion, which we try to resolve through documents. Other than Ms. Zappier and PV, there is no identity of parties; and there is no likelihood of prompt resolution – in fact it would exclude Ms. Zappier from the development of the overtime case in this Court. The Court should discourage wasteful motion to dismiss practice here, and allow discovery to proceed. Acting as requested would sever Ms. Zappier from the other plaintiffs, even though their cases address overlapping factual and legal issues. This would hardly be a way to promote judicial efficiency.

 2. **Plaintiffs Zappier and Flowers: the Release Alone Does Not Prove that its Execution Was Knowing and Willful given What Is Pleaded in the Complaint.**
.
Even if the efficacy of the release doesn't turn on the OWBPA criteria (which Defendants'' Counsel does not discuss here, but does in the context of the *Zappier* Complaint) , it is clear—particularly given how Plaintiff addresses the circumstances of her signing of the separation agreement in the Paragraph 44a of the Amended Complaint, and in far greater length in *Zappier v Project Veritas*—that defendant PV will be unable to argue as a *matter of law*, under Rule 12(b), that the Separation Agreement *standing alone* requires that the complaint be dismissed under the principles enunciated in the "totality of the circumstances" test described in *Bormann v. AT&T Communications, Inc.,* 875 F.2d 399, 402–03 (2d Cir.), cert. denied, 493 U.S. 924 (1989).

The same can be said about Flowers. The Amended Complaint addresses this issue in Paragraph 44b. It will not be possible for Defendants to argue that the Separation Agreement alone allows them to move to dismiss. The Complaint raises a *Bormann* issue in Plaintiff Flowers' circumstances.



Hon. Philip M. Halpern
October 25, 2022
Page 4

    **3.**    **Statute of Limitations**.

The Federal claims here have a three year statute of limitations (willfulness is pled, and, we believe, will be easy to prove). The State Law claims have a six-year statute of limitations. We concede that no Federal claim can go back before August 2019, and that no State Law Claim can go back before August 2016. To make a motion now to address what FLSA claims are viable (counsel only cites one Plaintiff, Schuy, as having **no** employment after August 2019), in a case which also has closely related pendant claims, which all plaintiffs have,  have, is inappropriate. Plaintiff Schuy should be allowed to stay in the case even if it is just to seek the NY State Labor Law damages that the other plaintiffs also seek.

    **4.**    <u>**The Wage And Hour Claims Are Sufficiently Pled**</u>

None of the plaintiffs here plead "broad generalizations."

- In Paragraphs 20 -22, Plaintiff **Gioia** discusses the responsibilities of his job as a Video Editor in great detail, and speaks about his work hours doing that work, work hours which can be refined more during discovery. Plaintiff Gioia alleges that he submitted time-sheets, which, unless destroyed by PV, will allow further refinement of his exact hours. This pleading is certainly not of the type disapproved by the Second Circuit in *Nakahata*." This case is not like *... Nakahata*, … which tried to parlay boilerplate pleadings of amorphous harm into costly and time-consuming fishing expeditions against a whole host of defendants." *Eggleston v. City of Binghamton*, 2020 WL 5232075, at *10 (N.D.N.Y., 2020)

- In Paragraphs 23-24 Plaintiff Zappier discusses her entire workday, beginning at 7:30am working on the "tip line," to her work at home, until 10pm, "taking calls from employees, arranging flights and hotel bookings, setting up Ubers, etc." (PV had 100 employees working all over the United States as "journalists," often moving from place to place on a daily basis),  and "making runs to the office." She asserts that if she had access to her work email she could construct a more exact description of her hours.

- In Paragraphs 25 – 27 Plaintiff Sculti describes his work responsibilities, which he asserts continued unabated from 9am to 7 or 8pm. In Paragraph 28 he provides a list of overtime hours by week, from 10-21-17 through 9-8-18. This is not a generalized pleading.

- In Paragraphs 29-30, Plaintiff Thibedeau describes both his hours per week, plus a detailed description of the work he did, sometimes cutting down



Hon. Philip M. Halpern
October 25, 2022
Page 5

> footage submitted by "journalists," sometimes editing finished videos, sometime working as a videographer, and sometimes teaching.
>
> - In Paragraphs 31- 35, Plaintiff Flowers describes his payment first as an "independent contractor," and then as an hourly paid employee. He describes his work as an "undercover journalist, and alleges that he worked 50-70 hours a week as a contractor, and then 18-20 hours a day when he became an hourly employee. During some part of his work, he was allowed to fill out a time sheet with his actual work time, and then was told to put "8 hours." This pleading in not the bareboned pleading disapproved by the 2nd Circuit.
>
> - In Paragraphs 36 – 37, Plaintiff Schuy describes his 9am to 7 or 8pm job in detail. He listened to video and audio material and chose material to forward to his supervisor, did graphic design, and sometimes worked as a remote camera operators taping subjects who were unaware that they were being filmed. There are no broad generalizations which undercut the plausibility of what Plaintiff Schuy is alleging.

These allegations make it plausible that they worked uncompensated hours in excess of 40 in a given week," *Nakahata*, 723 F.3d at 201, and should allow Plaintiffs to proceed with discovery where they can refine the exact number of hours working.  And see *Werst v. Sarar USA Inc.*, 2018 WL 1399343, at *6 (S.D.N.Y., 2018).

**5.     Plaintiff Flower's ERISA Claim Is Properly Pled Or Can Be Replead As A Claim for Non-ERISA Benefits**

Defendant  Flowers is one of a number of people employed by PV who were improperly classified as "independent contractors," One reason for doing that was to avoid overtime claims, especially since employees like Flowers worked 50-70 hours a week. The other purpose was to avoid provision of health insurance benefits, sick pay, vacation pay, holiday pay, and the like which were given to other employees pursuant to an employee handbook, or the like, which set forth benefits which hourly employees received. If none of these were benefits subject to ERISA, then Plaintiff Flowers and his class have a state law claim pursuant to the employee handbook. But it is doubtful that none of these benefits were subject to ERISA given that PV employed 100 people and operated on a $22 million budget. ERISA defines "employee benefit plans" to mean an "employee welfare benefit plan," an "employee pension benefit plan," or a plan that is both. 29 U.S.C. § 1002(3). ERISA further defines "employee welfare benefit plan" as "**any** plan, fund, or **program** ... established or maintained by an employer ... to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their



Hon. Philip M. Halpern
October 25, 2022
Page 6

beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services...." Id. § 1002(1). See *Filleti v. AOL, Inc.,* 2019 WL 859043, at *2 (D.Mass., 2019).

Whether these benefits were or weren't "ERISA" benefits will require a factual development not appropriate for a summary judgment motion. And, if it turns out that one or more weren't ERISA governed benefits, misclassified employees who were denied such benefits are not left without a remedy; they may proceed under a breach of contract theory or possibly under NY State law, or, for medical benefits, under the Affordable Care Act; such an amendment could be added now as an "alternative," or await factual development after discovery

### 6.   Okeefe and O'Hara are Proper Defendants

The Plaintiffs' wage and hour claims are aimed not only at their corporate employers, but also at the top officials of Project veritas, who, we allege, had the power to hire and fire, and determine the conditions of employment.

" [T]he Supreme Court has observed that the "{Fair Labor Standards ] Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category." *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 729 (1947). In particular, the FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.' " *Darden,* 503 U.S. at 326quoting 29 U.S.C. § 203(g)). This "definition of 'employ' is broad." *Rutherford Food Corp.,* 331 U.S. at 728, see also *Zheng I,* 355 F.3d at 66. Indeed, it is "the broadest definition" of the term "that has ever been included in any one act." *United States v. Rosenwasser,* 323 U.S. 360, 363 n. 3 (1945) (quoting 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo L. Black)). And this "striking breadth ... stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Darden,* 503 U.S. at 326" *Jean-Louis v. Metropolitan Cable Communications,* Inc., 838 F.Supp.2d 111, 121 (S.D.N.Y., 2011).

The FLSA's definition of employer is broad enough to "encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees." *Circle C. Invs., Inc.*, 998 F.2d 324 at 329 (5th Cir 1993). Paragraph 16 of the Amended Complaint alleges that O'Keefe and O'Hara "exercised operational control over employees". and that the "decisions they made directly affected the nature and conditions of



Hon. Philip M. Halpern
October 25, 2022
Page 7

employees' employment, including payment of overtime and classification." There is nothing deficient in this pleading that should be the subject of a Motion to Dismiss.

**Conclusion**

For the reasons stated above, neither dismissal nor a stay is appropriate. The proposed motion is entirely lacking in merit and should be denied.

> Respectfully submitted,
>
> /s/ *Arthur Z. Schwartz*
>
> Arthur Z. Schwartz

cc:   All Counsel (by ECF)