## SETTLEMENT AGREEMENT AND RELEASES

**THIS SETTLEMENT AGREEMENT** is made as of the last date in the signature blocks, between **NICK GIOIA, ANTONIETTA ZAPPIER, LEON SCULTI, PATRICE THIBODEAU, CASEY FLOWERS,** and **DAN SCHUY** (together, the "Plaintiffs" and each a "Plaintiff") and **PROJECT VERITAS** ("Employer"), **TOM O'HARA,** and **JAMES O'KEEFE** (together, the "Defendants" and each a "Defendant," and together with the Plaintiffs, the "Parties," and each of the Parties, a "Party").

## W I T N E S S E T H:

**WHEREAS**, Plaintiffs have alleged, *inter alia,* that Defendants failed to pay them certain wages and violated wage and hour laws in connection with their employment with Employer;

**WHEREAS**, Plaintiffs have commenced a purported collective and class action against Defendants titled *Gioia, et al. v. Project Veritas, et al.*, Case No. 22-cv-06710 (PMH) (S.D.N.Y.) (the "Action"), asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, the Employee Retirement and Income Security Act ("ERISA"), 29 U.S. Code § 1132, and the New York Labor Law ("NYLL");

**WHEREAS,** Defendants deny the allegations made against them by Plaintiffs in the Action, or that they engaged in any other wrongful conduct against Plaintiffs;

**WHEREAS**, a bona fide dispute exists as to Plaintiffs' claims asserted in the Action;

**WHEREAS**, Plaintiffs' counsel analyzed and evaluated the merits of the claims made against Defendants in the Action, conducted interviews with Plaintiffs, obtained and reviewed documents relating to Plaintiffs' claims, and based upon counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Action, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiffs and Plaintiffs' counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of Plaintiffs;

**WHEREAS,** the Parties wish to avoid the burdens and expense of protracted litigation;

**WHEREAS,** the Parties have agreed to settle all existing wage and hour disputes between them, including, but not limited to, those allegations set forth in the Action, pursuant to the terms and conditions of this Agreement; and

**WHEREAS**, Plaintiffs' claims, including, without limitation, the FLSA, NYLL and ERISA claims in the Action shall be dismissed in their entirety and with prejudice upon the Court's approval of this Agreement, and upon the Court "So Ordering" the Stipulation and Order of Dismissal with Prejudice executed by counsels for Plaintiffs and Defendants, as set forth below.

**NOW, THEREFORE,** in consideration of the mutual covenants and undertakings set forth herein, Plaintiffs and Defendants agree as follows:

1. **Settlement Payment.**

    a. Employer agrees to pay to Plaintiffs a total sum of Two Hundred Seventy Thousand Dollars ($270,000) (the "Settlement Payment") to be deposited in the escrow account of Plaintiffs' attorneys, Advocates for Justice, Chartered Attorneys ("AFJCA") (the "Attorney Escrow Account"), for which Escrow Account the account information is set forth in Attachment A annexed hereto. AFJCA shall distribute the sums to the plaintiffs less attorneys fees equal to twenty-five percent (25%) of the sum received.

    b. Employer shall pay the Settlement Payment according to the following schedule: (i) One Hundred Thirty-Five Thousand Dollars ($135,000) shall be paid within five (5) days of Court approval of this Agreement, and (ii) One Hundred Thirty-Five Thousand Dollars ($135,000) shall be paid on or before May 31, 2023.

    c. The payment of the Settlement Payment shall represent Plaintiffs' claims for liquidated damages and will not, therefore, be treated as wages. Employer shall issue an IRS Form 1099 to Plaintiffs for the payment referred to in this subparagraph. AFJCA shall provide Employer with a fully executed W-9 form as a pre-condition to the issuance of the Settlement Payment.

    d. Plaintiffs agree that some portion of the Settlement Payment, in amounts to be determined at the sole discretion of Plaintiffs, will be allocated to each of the Plaintiffs. The Parties agree that Defendants have no input into the Plaintiffs' allocation of the Settlement Payment, either as to the Plaintiffs or as to Plaintiffs' attorneys' fees, and the timing, amounts and manner of the allocation of the Settlement Payment are not a term and condition of this Agreement.

    e. Plaintiffs each acknowledges and agrees that Defendants are not providing any tax advice or representation. To the extent there are any additional tax consequences to Plaintiffs and/or Employer arising from payment of the settlement amount, Plaintiffs each agrees to indemnify and hold Employer harmless for all additional taxes, interest and penalties incurred as a result of any Plaintiff's failure to pay taxes on any payments made to his or his counsel.

2. **Stipulation and Order of Dismissal With Prejudice.** Within three (3) calendar days after the Court in the Action issues an Order approving of this Agreement, the Parties, through their counsel, shall execute, exchange, and any Party may file, a Stipulation and Order of Dismissal of the Action, with prejudice, and without costs to any Party, in the form annexed hereto as Attachment B.

3. **Release of Claims.**

    a. As a material inducement to Defendants to enter into this Agreement, Plaintiffs, on behalf of themselves, their heirs, successors, representatives, assigns, attorneys, agents, executors and administrators ("Releasors"), hereby irrevocably and unconditionally release, acquis, and forever discharge Defendants, their present, past and future owners, affiliates, related business entities, parent companies, subsidiaries, predecessors, successors, assigns, divisions, directors, officers, trustees, members, employees, tenants, stockholders, representatives, insurers, reinsurers, attorneys, heirs, agents, executors and administrators in their individual and representative capacities, and all persons acting by, through, under, or in concert with any of these (hereinafter collectively referred to as "Releasees"), from all charges, complaints, claims, liabilities, obligations, suits, demands, costs, losses, debts and expenses for all claims under the FLSA, New York Labor Law, and ERISA for all claims for penalties, general damages, liquidated

damages, punitive damages, compensatory damages, special damages, equitable relief, attorneys' fees and costs actually incurred, of any nature whatsoever known or unknown, suspected or unsuspected, that Plaintiffs had or now have, arising out of or relating to any matter **regarding the payment of wages or benefits** during or after Defendants' employment, up to the date of the execution of this Agreement (the "Releases").

    b. The Releases are meant to be as broad as legally permissible as applied to wages or benefit-related claims Releasors have or may have against the Releasees up to the date of the execution of this Agreement. This Agreement is intended to and shall release Releasees from any and all claims, whether known or unknown, which Releasors ever had, or now have against Releasees **regarding the payment of wages or benefits**, including, without limitation, any claim, whether brought on an individual basis or as part of a class or collective action, including but not limited to, claims under the following statutes (each as amended): the FLSA; the NYLL; ERISA, Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991; Sections 1981 and 1983 of the Civil Rights Act of 1866; the Family and Medical Leave Act; the National Labor Relations Act; the Occupational Safety and Health Act; the Equal Pay Act; the Rehabilitation Act of 1973; the Americans With Disabilities Act of 1990; the Patient Protection and Affordable Care Act; the Lilly Ledbetter Fair Pay Act; the United States and any applicable state constitutions; NYLL; the New York State Human Rights Law; the New York Whistleblower Laws; the New York Wage Theft Prevention Act; the retaliation provision of the New York Workers' Compensation Law; and the New York Equal Pay Law.  The Releases also include, but are not limited to, claims for wrongful termination, constructive discharge, harassment, discrimination, and/or retaliation, including based on age, sex, race, gender, sexual orientation, gender identity or expression, religion, national origin, veteran status, disability or other protected characteristics under applicable federal, state or local law; claims for failure to accommodate and/or denial of accommodation; claims for negligence, defamation, invasion of privacy, personal injury, assault and battery, and/or intentional or negligent infliction of emotional distress; claims for fraud, misrepresentation, securities fraud, violation of public policy, whistleblowing, breach of fiduciary duty and/or tort; claims for breach of contract (oral, written, express or implied), including claims arising from any collective bargaining agreement to which Local 210 is or was a party; claims for tortious interference with contract, breach of the implied covenant of good faith and fair dealing and/or promissory estoppel; claims for wages, overtime, bonuses, on call pay, sick pay, vacation pay, equity, options, remuneration of any kind, commissions and/or severance pay; claims for costs, penalties, damages, interest and/or attorneys' fees; and any other claims arising from or relating to my relationship with any Releasees based on any theory or law now or later recognized.  The Releases includes a waiver of jury trials and non-jury trials.  The Releases are meant to be as broad as legally permissible and apply to employment-related claims addressed to payment of wages or benefits Plaintiffs have or may have had against the Defendants up to the date of the execution of this Agreement.

    c. The Parties intend for this Agreement to be a full, binding, and enforceable contract. The Parties acknowledge that, pursuant to Gaughan v. Rubenstein, 261 F. Supp.3d 390 (S.D.N.Y. 2017), this Agreement resolves, *inter alia*, any claims Plaintiffs may have under the Fair Labor Standards Act or the New York Labor Law, is not a product of one-sided bargaining and is instead the result of a fair process involving arms-length negotiation, between experienced counsel, which resulted in the exchange of a significant sum of money. As such, the Parties concur that this Agreement is in line with the spirit and terms outlined by the Second Circuit in Cheeks v. Freeport Pancake House, Inc., 769 F.3d 199 (2d Cir. 2015), and is therefore binding.  If any

Plaintiff files suit against Releasees seeking recovery under the FLSA or NYLL based upon any conduct occurring up to and including the date of the complete execution of this Agreement, he/she agrees that Releasees may utilize this Agreement to demonstrate to the Court that he/she is not entitled to any additional recovery and that the Court should dismiss his/her claims.

   d. Notwithstanding the foregoing, this Agreement is not intended to interfere with Plaintiffs' right to cooperate with an investigation by a governmental agency, including but not limited to the EEOC, or other similar governmental agencies or bodies.

 **4.** **No Effect on Separation Agreements And Releases Signed by Antonietta Zappier and Casey Flowers.** This Agreement shall not have any effect, and shall not be deemed to void, modify, or supersede, on the Separation Agreements and Releases signed by Plaintiff Antonietta Zappier on or about ▆▆ and Plaintiff Casey Flowers on or about ▆▆, except to the extent stated herein.

 **5.** **No Admission of Liability.** Plaintiffs acknowledge that Defendants have entered into this Agreement solely for the purpose of avoiding the burdens and expense of protracted litigation. Further, the Parties agree and acknowledge that neither this Agreement nor the furnishing of consideration for the Releases, shall be construed as an admission that any Defendant or any Releasee has violated any federal, state or local law (statutory or decisional), ordinance or regulation, or that any Defendant or any Releasee has committed any wrong against Plaintiffs.

 **6.** **Representations and Acknowledgments.** Plaintiffs hereby represent and agree that each has been advised by Employer of his/her right to discuss all aspects of this Agreement with an attorney, financial advisor, and/or representative of his/her choice; that he/she has so consulted with his attorney, financial advisor, and/or representative, that he/she carefully has read all of the provisions of this Agreement; that he/she has had the opportunity to have his/her attorney, financial advisor, and/or representative answer any questions he/she might have had; that he/she fully understands all of the provisions of this Agreement; that he/she has had a reasonable amount of time within which to consider whether or not to enter into this Agreement; and that he/she is voluntarily and knowingly entering into this Agreement.

 **7.** **Complete Agreement.** This Agreement represents the complete and full settlement of any and all claims by Plaintiffs against any Defendant or any Releasee regarding the payment of wages and fully supersedes any and all prior agreements or understandings between the Parties hereto pertaining to the subject matter hereof. Plaintiffs each represents and acknowledges that in executing this Agreement, he/she does not rely upon any representation or statement made by a representative of any Defendant with regard to the subject matter, basis or effect of this Agreement other than those contained herein. This Agreement may not be changed in any respect, except by a writing duly executed by the Parties or authorized representatives of the Parties.

 **8.** **Knowing And Voluntary Waiver And Release.** The Parties hereto acknowledge that they are entering into this Agreement freely and voluntarily; that all Parties have read each page of this Agreement carefully before signing same; that all Parties have ascertained and weighed all the facts and circumstances likely to influence their judgment herein; that each Party has had the opportunity to be represented by its/his/her own counsel or has waived such opportunity; that all the provisions hereof, as well as all questions pertaining thereto, have been fully and satisfactorily explained to each Party; that each Party has given due consideration to such provisions and finds them to be in their respective best interests; and, that each Party clearly understands and assents to all the provisions hereof. Plaintiffs represent that none is a party to any

bankruptcy, lien, creditor-debtor or other proceeding which would impair the right to settle all claims against Defendants or to waive all claims that Plaintiffs may have against Defendants. If any lien exists or is asserted relating to any debt of any Plaintiff that requires payment out of the proceeds of this Agreement, Plaintiffs each agrees to utilize each Plaintiff's portion of the Settlement Payment made hereunder to satisfy that lien, and agrees to indemnify and hold Defendants harmless in connection with the lien.

      **9.**    **Remedy for Breach.** Nothing shall limit the right of any of the Parties to bring an action to enforce this Agreement except as set forth herein.  Each of the Parties shall be entitled, in addition to any other right or remedy they may have at law or in equity related to breaches of this Agreement, to (i) all costs associated with enforcing the Agreement, including but not limited to attorneys' fees; and (ii) an injunction, without the posting of any bond or other security, enjoining or restraining the offending parties from any violation of this Agreement, the offending Party hereby acknowledging the irreparable harm inherent in a breach of this Agreement and consenting to the issuance of such injunction.

      **10.**    **Severability.**  The provisions of this Agreement shall be deemed separate and severable. Should any provision or portion of the Agreement be held invalid or unenforceable, the affected provision shall be modified to the extent necessary to make it legal, valid and enforceable. If it cannot be so modified, it shall be severed from the Agreement, and the remainder of this Agreement shall remain unaffected and continue in full force and effect, which then shall be interpreted to bar any and all claims regarding the payment of wages Plaintiffs may have against Employer.  If the Releases of claims contained in Paragraph 3 above is limited or held to be null and void, then Plaintiffs shall execute an enforceable general and unlimited release of all wage-related claims.

      **11.**    **Jointly Drafted Agreement.** This Agreement shall be deemed to have been jointly drafted, and no provision herein shall be interpreted or construed for or against any party because such party drafted or requested such provision, or this Agreement as a whole.

      **12.**    **Entire Agreement**: This Agreement contains the entire agreement and understanding among the Parties with respect to the subject matter hereof, and supersedes all prior and contemporaneous agreements, understandings, inducements and conditions, express or implied, oral or written, of any nature whatsoever with respect to the subject matter hereof. The express terms of this Agreement control and supersede any course of performance and/or usage of the trade inconsistent with any of the terms hereof. This Agreement may not be modified or amended other than by an agreement in writing signed by all parties to this agreement.

      **13.**    **Applicable Law and Jurisdiction.** This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of New York, excluding the conflict-of-laws principles thereof.  The parties consent and stipulate to the personal jurisdiction of the United States District Court for the Southern District of New York and the Supreme Court of the State of New York in any subsequent proceeding to enforce this Agreement.

      **14.**    **Headings**.  Headings used in this Agreement are for convenience only and shall not be used in connection with the interpretation of any provision hereof.

      **15.**    **Defined Terms**.  Capitalized terms used in this Agreement shall have the meanings ascribed to them at the point where first defined, irrespective of where their use occurs, with the same effect as if the definitions of such terms were set forth in full and at length every time such

terms are used. Wherever appropriate in this Agreement, personal pronouns shall be deemed to include the other gender and the singular to include the plural.

      **16.**      <u>**Counterparts and Facsimile Signatures**</u>.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, and may be enforced as such. The parties agree that a faxed or scanned signature shall have the same force and effect as an original signature and that this Agreement may be executed in counterparts by fax or pdf attachments to emails.

      **17.**      <u>**Notices**</u>.  Any notice or communication that the Parties desire to give or are required to give to the other(s) shall be in writing and either sent by prepaid, registered or certified mail, return receipt requested, or by any so-called "overnight" or "one-day" mailing service addressed to such other Party at the address(es) set forth below.  Notice shall be deemed communicated within three (3) business days from the date of mailing or on the date of actual receipt, whichever date is earlier, if delivered as provided in this paragraph. The addresses for notice are as follows, unless otherwise specified:

| PARTY | ADDRESS | COPY TO: |
|---|---|---|
| Plaintiffs | No direct notices – send to counsel only | Arthur Z. Schwartz, Esq.<br>225 Broadway Suite 1902<br>New York, New York 10007<br>aschwartz@advocatesny.com |
| Defendants | c/o Project Veritas<br>1214 West Boston Post Road, No. 148<br>Mamaroneck, New York 10543 | Justin T. Kelton Esq.<br>Abrams Fensterman, LLP<br>1 Metrotech Center, Suite 1701<br>Brooklyn, New York 11201<br>jkelton@abramslaw.com |

      **WHEREFORE**, the Parties hereto have read the foregoing Agreement and accept and agree to the provisions contained herein, and hereby have caused this Agreement to be made effective as of the date above written.

      **IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereto have caused this Agreement to be executed as of the date written below.

      **[REMAINDER OF PAGE INTENTIONALLY BLANK]**

**NICK GIOIA**

_____
Nick Gioia

**STATE OF** _____ )
                            )ss.:
**COUNTY OF** _____ )

On the _____ day of _____, in the year 2023 before me, the undersigned, a Notary Public in and for said State, personally appeared Nick Gioia, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

_____
Notary Public

**ANTONIETTA ZAPPIER**

_____
Antonietta Zappier

**STATE OF** _____ )
                            )ss.:
**COUNTY OF** _____ )

On the _____ day of _____, in the year 2023 before me, the undersigned, a Notary Public in and for said State, personally appeared Antonietta Zappier, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

_____
Notary Public

**LEON SCULTI**

_____
Leon Sculti

**STATE OF** **_____** )
                               )ss.:
**COUNTY OF** **_____** )

On the _____ day of _____, in the year 2023 before me, the undersigned, a Notary Public in and for said State, personally appeared Leon Sculti, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

_____
Notary Public

**PATRICE THIBODEAU**

_____
Patrice Thibodeau

**STATE OF** _____ )
                                               )ss.:
**COUNTY OF** _____ )

      On the _____ day of _____, in the year 2023 before me, the undersigned, a Notary Public in and for said State, personally appeared Patrice Thibodeau, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

                                                                                    _____
                                                                                    Notary Public

**CASEY FLOWERS**

_____
Casey Flowers

**STATE OF** _____ )
                              )ss.:
**COUNTY OF** _____ )

On the _____ day of _____, in the year 2023 before me, the undersigned, a Notary Public in and for said State, personally appeared Casey Flowers, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

_____
Notary Public

**DAN SCHUY**

_____
Dan Schuy

**STATE OF** _____ )
                                           )ss.:
**COUNTY OF** _____ )

On the \_\_\_\_\_ day of _____, in the year 2023 before me, the undersigned, a Notary Public in and for said State, personally appeared Dan Schuy, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

_____
Notary Public

**PROJECT VERITAS**

By: _____
NAME:
TITLE:


**STATE OF** _____ )
                                             )ss.:
**COUNTY OF** _____ )

      On the _____ day of _____, in the year 2023 before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual executed the instrument.


                                                          _____
                                                          Notary Public

**S2 HR SOLUTIONS 1A, LLC (d/b/a ENGAGE PEO LLC)**

By: _____
NAME:
TITLE:


**STATE OF** _____  )
                               )ss.:
**COUNTY OF** _____ )

      On the _____ day of _____, in the year 2023 before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual executed the instrument.


                                                          _____
                                                          Notary Public

**TOM O'HARA**

_____
Tom O'Hara

**STATE OF** _____ )
                             )ss.:
**COUNTY OF** _____ )

On the _____ day of _____, in the year 2023 before me, the undersigned, a Notary Public in and for said State, personally appeared Tom O'Hara, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

_____
Notary Public

**JAMES O'KEEFE**

_____
James O'Keefe

**STATE OF** _____ )
                            )ss.:
**COUNTY OF** _____ )

On the _____ day of _____, in the year 2023 before me, the undersigned, a Notary Public in and for said State, personally appeared James O'Keefe, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual executed the instrument.

_____
Notary Public