**advocates**
**for justice**
**chartered attorneys**

225 Broadway, Suite 1902
New York, New York 10007

t. (212) 285-1400
f. (212) 285-1410

www.afjlaw.com

> Motion granted. Having carefully reviewed the fairness letter as well as the executed proposed settlement agreements, the Court finds that all of the terms of the proposed settlements (including the allocation of attorneys' fees and costs) appear to be fair and reasonable under the totality of the circumstances (and in light of the factors enumerated in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)). *See Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015). Accordingly, the proposed settlement is hereby approved. The Clerk of Court is respectfully directed to close this case.
>
> SO ORDERED.
>
> Philip M. Halpern
> United States District Judge
>
> Dated:  White Plains, New York
>            May 8, 2023

Hon. Philip M. Halpern
United States District Court
300 Quarropas Street
White Plains, New York 10601

Re:     Gioia v. Project Veritas
          22-cv-06710
          Cheeks Application

Dear Judge Halpern:

This is a Letter Motion requesting approval of the two agreements which Plaintiffs have reached with all of the Defendants. The application is made in line with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). There are two separate agreements, one which has been approved by Defendant Project Veritas and its CFO Tom O'Hara (collectively "PV"), and the other by Defendant S2 HR Solutions 1A, LLC (d/b/a Engage PEO LLC) ("Engage"). The PV Proposed Agreement is attached as Exhibit A and the Engage Agreement is annexed as Exhibit B.

As part of the settlement PV will pay Plaintiffs $270,000, over a one-month period (one payment within 5 days of the Court's approval and one by the end of May). Engage will add an additional $15,000 to the settlement, making the package worth $285,000. Having worked to calculate lost wages/overtime we had estimated 100% wage recovery as a sum around $350,000. (This does not include liquidated damages.) $285,000 represents a significant success given this sum. Plaintiffs also had to take into account that PV is in the midst of considerable turmoil, having recently terminated its CEO James O'Keefe, who immediately set up a competing organization. O'Keefe was PV's principal fundraiser, and his separation from the organization has resulted in PV losing tens of thousands if not hundreds of thousands of followers on social media. Engage, who was being sued as a co-employer, had significant argument, and case law, about why, as the PV payroll company, it was not an "employer." In addition, PV was about to file a Motion to Dismiss which would raise serious issues, without any guarantee of success by the Plaintiffs.

The settlement agreements provide for a 25% attorney's fee, to be taken by my firm from the $285,000 paid by PV and Engage.



Hon. Philip M. Halpern
April 26, 2023
Page 2

Both agreements have releases limited to wage payment and employment-related benefit claims only (the complaint did state an ERISA claim). Neither contains a prohibition about publicity, and neither prohibits counsel for Plaintiffs from representing others in similar litigation. The settlement agreement was reached subsequent to a day-long mediation conducted by a Mediator appointed by the District Court. Mr. Kelton and I are both experienced litigators, as is counsel for Engage, Michael Miller; the undersigned has been practicing law for more than 44 years and has litigated hundreds of cases, as well as major union contracts.

In *Cheeks*, the Second Circuit held that the FLSA is an "applicable federal statute" under Rule 41 because of "the unique policy considerations underlying" the act. 796 F.3d at 206, requiring approval of the Court on any settlement agreement which results in dismissal of a complaint. Such considerations include the laudable aim of "'extend[ing] the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id.* (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

"Generally, if the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved" by the reviewing court. *Ceesae v. TT's Car Wash Corp.*, 17 CV 291 (ARR) (LB), 2018 WL 1767866, at *2 (E.D.N.Y. Jan. 3, 2018) (internal quotation marks and citation omitted) *report and recommendation adopted by* 2018 WL 741396 (Feb. 7, 2018). In reviewing the reasonableness of the proposed settlement, courts consider the totality of the circumstances, including relevant factors such as:

(1) the plaintiff's range of possible recovery;

(2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;

(3) the seriousness of the litigation risks faced by the parties;

(4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and

(5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d 332, 335 (SDNY 2012).

Factors weighing *against* settlement approval include:

(1) the presence of other employees situated similarly to the claimants

(2) a likelihood that the claimant's circumstance will recur;



Hon. Philip M. Halpern
April 26, 2023
Page 3

      (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and

      (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace. *Id.*

      Even if an application of the *Wolinsky* Factors demonstrates that the agreement is reasonable, the court must also consider whether the settlement "complies with the Second Circuit's admonitions as articulated in *Cheeks*." *Ezpino v. CDL Underground Specialists, Inc.*, 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *1 (E.D.N.Y. June 30, 2017) (citation omitted), *report and recommendation adopted* 2017 WL 3037406 (E.D.N.Y July 17, 2017). Specifically, courts should guard against "highly restrictive confidentiality provisions," overbroad releases that "would waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," and "a[ny] provision that would set the fee for plaintiff's attorney ... without adequate documentation." *Cheeks*, 796 F.3d at 206 (citation omitted). Related to the final admonition, courts must also ensure that any attorney's fees provided for in the agreement are reasonable. *See* 29 U.S.C. § 216(b) ("The Court ... shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action."); *see also Ceesae*, 2018 WL 1767866 at *2 (noting that courts engaging in a *Cheeks* review must "evaluate[ ] the reasonableness of any attorney's fees included in the proposed settlement") (citing 29 U.S.C. § 216(b)); *Aamodt v. Cnty. of Nassau*, 2023 WL 2538655, at *2 (E.D.N.Y., 2023).

      We submit that on all factors these agreements should be approved. As we discuss above, Plaintiffs have won a substantial portion of their potential back wage award; in this respect the Court should note that most of the Plaintiffs do not have precise contemporaneous time records. The litigation is at an early stage, and substantial issues remain to be decided by the Court. The bargaining was wholly at arm's length, having in large part been guided by the Mediator. There is no windfall here for Plaintiff's counsel, who would do far better if the parties were to litigate to the end, perhaps even as a class action. We also think that the publicity surrounding this case (it was reported in the New York Times and in other national media) and the non-secret nature of the settlement will assure that the complained about practices won't continue.

      Counsel for the Defendants, we hope, will quickly affirm our argument above, allowing an expeditious decision by the Court. The first payment under the agreement can be made this month, but that will only occur with a swift approval by the Court.



Hon. Philip M. Halpern
April 26, 2023
Page 4

Thank you for your consideration.

Respectfully submitted,

/s/ *Arthur Z. Schwartz*

Arthur Z. Schwartz

cc:    Justin Kelton, Esq. (by ECF)
       Michael Miller, Esq (by email)
       Theresa D'Andrea, Esq. (by email)